# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| **CHRISTOPHER EARL SNIPES,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:18CV00025 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **THE SOUTHWEST VIRGINIA** | ) | By: James P. Jones |
| **REGIONAL JAIL AUTHORITY,** | ) | United States District Judge |
| | ) | |
| Defendant. | ) | |

*Rodney B. Rowlett, III, Shine & Rowlett, PLLC, Kingsport, Tennessee, and Gregory M. Stewart, Stewart Law Office, P.C., Norton, Virginia, for Plaintiff; Joseph A. Piasta and Lori J. Bentley, Johnson, Ayers & Matthews, P.L.C., Roanoke, Virginia, for Defendant.*

The plaintiff in this action, Christopher Earl Snipes, asserts claims against defendant The Southwest Virginia Regional Jail Authority ("Jail Authority"), his former employer, alleging that the Jail Authority violated the Family Medical Leave Act ("FMLA") by interfering with his FMLA rights and retaliating against him for exercising these rights. The Jail Authority has moved to dismiss Snipes' Complaint for failure to state a claim upon which relief can be granted. For the reasons that follow, I will grant the motion in part and deny it in part.

I.

The Complaint alleges the following facts, which I must accept as true for the purpose of deciding the Motion to Dismiss.

Snipes began working for the Jail Authority in 2005. Snipes supervised several other employees, received employee evaluations demonstrating that he was a commendable employee, and exceeded job performance criteria. Snipes was promoted to the rank of Lieutenant because he performed his duties skillfully and with distinction.

In 2015, Snipes' wife developed a medical condition that was ultimately diagnosed as Cacchi-Ricci disease. As a result, she underwent inpatient care and periods of continuous treatment by a healthcare provider, and she experienced periods of incapacity. In October 2015, she underwent a medical procedure, and Snipes took intermittent leave under the FMLA so he could assist her with daily activities. On March 14, 2016, Snipes' wife underwent another medical procedure, and her physician completed a Certification of Healthcare Provider for Family Member's Serious Health Condition regarding this procedure. The certification stated that Snipes' wife would be incapacitated from March 14, 2016, to April 13, 2016, and during this time, she would be unable to rise from a seated position without assistance, to lift heavy weights, to care for her children, to operate a motor vehicle, or to perform household duties. The certification was provided to

the Jail Authority on April 5, 2016.  Snipes alleges that his supervisors "questioned his use of leave and exhibited hostility towards him which included but was not limited to statements that he needed to return to work."  Compl. ¶ 28, ECF No. 1.

On April 26, 2016, Snipes received an Employee Performance Appraisal, which found that he "Meets Standards."  *Id.* at ¶ 18.  The performance appraisal also rated his ability to interact with others and maintain a productive relationship as "distinguished," which is the highest rating that can be given.  *Id.* at ¶ 19.  Further, the appraisal rated his leadership and staff relations as "commendable," the second highest rating that can be given.  *Id. at* ¶ 20.

On May 31, 2016, the Jail Authority terminated Snipes' employment.  As grounds for his termination, the Jail Authority alleged that his "[l]eadership and support for staff is not acceptable."  *Id.* at ¶23.  In particular, the Jail Authority alleged that on May 27, 2016, Snipes had acted inappropriately when he became upset with and belittled a subordinate.  Snipes denies these allegations.  Snipes had not been advised of any deficiencies in his leadership or support before his termination.

Snipes' Complaint alleges that the Jail Authority violated the FMLA when it terminated Snipes' employment.  In particular, the Complaint alleges that the Jail Authority violated the FMLA by interfering with Snipes' use of FMLA-protected leave and by retaliating against Snipes for using FMLA-protected leave.  The Jail

Authority moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The Motion to Dismiss has been fully briefed and is now ripe for decision.[1]

## II.

Federal pleading standards require that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In order to survive a motion to dismiss, the complaint must "state[] a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon its "judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In evaluating a pleading, the court accepts as true all well-pled facts and construes those facts in the light most favorable to the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. at 679. A complaint does not need detailed factual allegations to survive a motion to dismiss; however,

---

[1] I will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not significantly aid the decisional process.

it must have more than labels and conclusions or a recitation of the elements of the cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007).

A.

The Jail Authority moves to dismiss Snipes' interference claim, arguing that the claim is not plausible because Snipes has not alleged that the Jail Authority denied his leave requests or that it limited or compromised the leave he took. Snipes counters that the Jail Authority interfered with his FMLA rights because its hostile comments had a chilling effect and would discourage employees from requesting FMLA leave. Snipes also alleges that the Jail Authority interfered with his FMLA rights when it terminated him, because he would plausibly have required additional FMLA leave in the future, but the termination prevented him from exercising this right.

The FMLA makes it unlawful for any employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]." 29 U.S.C. § 2615(a)(1). To state a claim for FMLA interference, plaintiffs must show that (1) they were an eligible employee, (2) the defendant was an FMLA-defined employer, (3) they are entitled to leave under the statute, (4) they gave notice to the employer that they would take FMLA leave, and (5) the defendant denied their FMLA rights. *Corbett v. Richmond Metro. Transp. Auth.*, 203 F. Supp. 3d 699, 709 (E.D. Va. 2016). Interference includes refusing to

authorize FMLA leave and discouraging an employee from taking FMLA leave. *Rodriguez v. Reston Hosp. Ctr., LLC*, No. 1:16-cv-623 (JCC/JFA), 2017 WL 772348, at *4 (E.D. Va. Feb. 28, 2017). Plaintiffs must also allege prejudice as a result of the interference. *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002).

An employer's conduct may constitute interference with an employee's FMLA rights if it would have a chilling effect and would discourage employees from exercising their FMLA rights. *See Gordon v. United States Capitol Police*, 778 F.3d 158, 164–66 (D.C. Cir. 2015); *Rodriguez*, 2017 WL 772348, at *5. Snipes cites to both *Gordon* and *Rodriguez* in support of his argument that the Jail Authority's actions interfered with his FMLA rights.

In *Gordon*, the plaintiff requested pre-approval for a bank of FMLA leave pursuant to her employer's leave policies, and her employer granted approval. 778 F.3d at 160. The plaintiff was later told that an upper-level manager had said that he was "'mad'" about FMLA requests generally, and he had vowed to "'find a problem'" with the plaintiff's request. *Id.* After the plaintiff obtained the bank of leave, but before she used it, her employer ordered her to take a "'fitness for duty examination,'" and her employer told her that her FMLA leave request was the reason for the order. *Id.* When the plaintiff later requested to draw on her bank of FMLA leave, her manager "'became irate'" and refused the request. *Id.* The

manager later granted the request. *Id.* The court found that the employer's course of conduct would have a chilling effect on requests for FMLA leave, and thus it had a reasonable tendency to interfere with an employee's exercise of FMLA rights. *Id.* at 165–66.

In *Rodriguez*, the employer required the plaintiff to complete a "'return to work'" plan after the plaintiff notified his employer that he could return from FMLA leave. 2017 WL 772348, at *2. The plaintiff alleged that this requirement was not typical at his workplace. *Id.* The employer also refused to extend one of the plaintiff's work deadlines to account for his FMLA leave, and it terminated the plaintiff after he failed to meet the deadline. *Id.* at *2. The court found that this conduct provided sufficient facts to plausibly infer that the employer interfered with the plaintiff's FMLA rights by discouraging employees from exercising their rights. *Id.* at *5.

There are key distinctions between the case at issue and both *Gordon* and *Rodriguez*. In each of these cases, the plaintiffs alleged facts showing a change in their working conditions after they exercised their FMLA rights — Gordon had to take a "fitness for duty" examination that could have found her unfit for duty, and Rodriguez had to complete an atypical "return to work" plan. The employer conduct in both cases — making new demands of employees after they requested or took FMLA leave — makes it plausible that employees would be discouraged

from taking FMLA leave. Here, however, Snipes has not alleged any changes in his working conditions after he returned from his FMLA leave.

In addition, Snipes has not alleged facts making it plausible that the Jail Authority's hostile comments alone discouraged him or other employees from exercising their FMLA rights, nor has he alleged facts regarding his reaction to the Jail Authority's alleged hostility or facts suggesting that other employees heard or knew of the hostility. Thus, Snipes has not submitted facts sufficient for the court to infer that the Jail Authority's conduct interfered with his FMLA rights by discouraging him or other employees from exercising their rights.

Snipes' argument that the Jail Authority interfered with his FMLA rights when it terminated him also fails to allege facts sufficient to state a claim for relief. Employees who are terminated after taking FMLA leave and being reinstated to the same position from which they left do not satisfy the fifth element of a claim for interference. *See Capps v. Mondelez Global, LLC*, 847 F.3d 144, 155–56 (3d Cir. 2017). They have not been denied their FMLA rights; instead, they have received all of the benefits to which they are entitled. *See id.* In addition, Snipes has not alleged sufficient facts for the court to plausibly infer that his wife's condition would require him to take additional leave. Snipes did not allege any facts about his wife's prognosis or condition at the time he was terminated. Thus, Snipes has not alleged facts sufficient for the court to infer that the Jail Authority

interfered with his FMLA rights. Accordingly, I will grant the Motion to Dismiss as to Snipes' interference claim.

B.

The Jail Authority also moves to dismiss Snipes' retaliation claim, arguing that the claim is not plausible because he has not alleged facts showing a causal connection between his termination and his use of FMLA leave. The Jail Authority asserts that instead, the facts in the Complaint show that Snipes was terminated for misconduct and a failure of leadership. The Jail Authority argues that Snipes' denial of this misconduct is a bare assertion, and thus the court need not accept it as true. In contrast, Snipes argues that his denial is a factual statement that the court must accept as true, and this fact supports a causal connection between his termination and his use of FMLA leave.

The FMLA makes it unlawful for any employer to "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the FMLA]." 29 U.S.C. § 2615(a)(2). FMLA retaliation claims are analogous to discrimination claims brought under Title VII of the Civil Rights Act ("Title VII"). *Laing v. Fed. Express Corp.*, 703 F.3d 713, 717 (4th Cir. 2013). Thus, a court will evaluate a plaintiff's FMLA retaliation claim using Title VII standards. *See id.* At the motion to dismiss stage, the ordinary rules for assessing the sufficiency of a complaint apply. *See McCleary-Evans v. Md. Dep't of*

*Transp.*, 780 F.3d 582, 584–85 (4th Cir. 2015). A plaintiff need not plead facts sufficient to make out a prima facie case of discrimination. *See id.* Instead, a plaintiff must allege facts sufficient to satisfy the elements of a FMLA cause of action. *See id.* at 585. Thus, employees must allege facts that permit the court to plausibly infer that their employer discharged or discriminated against them because they exercised their FMLA rights.

A close temporal relationship between these two events is sufficient to establish causality at the motion to dismiss stage. *Cf. Laing*, 703 F.3d at 720 (finding that the close temporal relationship between the plaintiff's suspension on the morning of her return from FMLA leave and her termination within the month was sufficient to establish a prima facie case of causality at the summary judgment stage); *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir. 1989) (finding that the plaintiff's proof that she was fired after her employer became aware that she had filed a Title VII discrimination charge was sufficient to establish a prima facie case of causality at the summary judgment stage).

Snipes' denial of the Jail Authority's assertions of misconduct is a factual statement that the court must accept as true. Pursuant to *Twombly*, Snipes need not provide detailed factual allegations; he needs only to provide more than labels and conclusions. His denial of the Jail Authority's factual assertion remains a factual assertion.

Taking this denial and the remaining facts in the Complaint as true, Snipes' allegations permit the court to plausibly infer that the Jail Authority terminated him because of his FMLA leave. As alleged in the Complaint, Snipes was a distinguished employee who had not been advised of any deficiencies in his performance. Snipes took a month of FMLA leave, and the Jail Authority questioned his use of leave, was hostile towards him, and stated that he needed to return to work. The month after Snipes returned from FMLA leave, the Jail Authority alleged that he belittled a subordinate, which Snipes denies, and it terminated him. Snipes had received a positive performance evaluation the month before he was terminated, and he had not been given any other feedback regarding his interactions with subordinates before his termination. Moreover, the temporal relationship between these events is sufficient to plausibly infer causality at the motion to dismiss stage. Accordingly, I will deny the Motion to Dismiss as to Snipes' retaliation claim.[2]

---

[2] Of course, I hold only that Snipes' retaliation claim alleges facts sufficient to survive a motion to dismiss. I make no prediction that it would survive a motion for summary judgment or that Snipes would prevail at trial.

III.

For the foregoing reasons, the Motion to Dismiss, ECF No. 7, is GRANTED IN PART and DENIED IN PART.

It is so **ORDERED**.

                ENTER: October 5, 2018

                /s/ James P. Jones
                United States District Judge