IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | | |
|---|---|---|
| **CHRISTOPHER EARL SNIPES,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:18CV00025 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **THE SOUTHWEST VIRGINIA** | ) | By: James P. Jones |
| **REGIONAL JAIL AUTHORITY,** | ) | United States District Judge |
| | ) | |
| Defendant. | ) | |

*Rodney B. Rowlett, III, Shine & Rowlett, PLLC, Kingsport, Tennessee, for Plaintiff; Joseph A. Piasta, Johnson, Ayers & Matthews, P.L.C., Roanoke, Virginia, for Defendant.*

In this action arising out of the Family and Medical Leave Act ("FMLA"), plaintiff Christopher Earl Snipes alleges that defendant The Southwest Virginia Regional Jail Authority ("Jail Authority" or "the Authority") violated the FMLA by terminating his employment in retaliation for his use of FMLA-protected leave. The Jail Authority has moved for summary judgment, arguing that it terminated Snipes' employment for a legitimate, nondiscriminatory reason and Snipes cannot show that this reason was pretext for discrimination based on his use of FMLA leave. For the reasons that follow, I will deny the defendant's Motion for Summary Judgment.

I.

The following facts taken from the summary judgment record are either undisputed or, where disputed, are presented in the light most favorable to the plaintiff as the nonmoving party.

The Jail Authority operates four jails in Southwest Virginia. The Authority organizes its correctional officers in a paramilitary structure — they begin as officers and may progress in rank to corporal, sergeant, lieutenant, captain, and major. Officers directly supervise the inmate population and the jail's day-to-day operations. To prepare to take on a higher rank, officers may apply to be corporals, who are given additional responsibilities for disciplining inmates and training new officers. Sergeants supervise the officers on each shift and handle more serious inmate disciplinary processes. Lieutenants are shift commanders and are ultimately responsible for the functioning of each shift. Lieutenants also have administrative responsibilities, including determining the appropriate staffing for each shift, scheduling employees' time off, and documenting and investigating any accidents that occur during the shifts. Captains supervise the lieutenants, and majors oversee all of the staff.

Discipline of correctional officers is approached on a case-by-case basis and can be tailored to the rank of the officer. Supervisors may give employees verbal warnings, and the Authority's employee handbook provides for formal disciplinary

actions, which include written counseling, written reprimands, suspension with or without pay, and termination of employment. Termination may occur after an employee commits multiple minor violations of the Authority's policies or because of an employee's poor job performance. Supervisory personnel are usually not demoted when issues arise; rather, they "move up and out." Mot. Summ. J. Ex. 5, Kilgore Dep. 66:25, ECF No. 23-5.

Snipes began working for the Jail Authority as an officer in 2005, and he became a corporal in 2007. In 2010, he was promoted to sergeant, and in December 2012, he was promoted to lieutenant. During his time as a lieutenant, he oversaw the jail's night shift.

In 2015, Snipes' wife developed a medical condition that was ultimately diagnosed as Cacchi-Ricci disease. As a result, she required inpatient care and experienced periods of incapacity. In October 2015, she underwent a medical procedure, and Snipes notified the Authority that he needed to take FMLA leave to care for her. The Authority approved his FMLA leave request, allowing him to take leave intermittently per doctor's orders. On March 14, 2016, Snipes' wife underwent another medical procedure, which her doctor determined would leave her incapacitated from March 14, 2016, to April 13, 2016. After both occasions, Snipes submitted to the Authority certifications from the doctor describing his wife's health issues and the care she required. Snipes is uncertain of the exact

dates on which he took FMLA leave, but he did so intermittently between October 2015 and March or April 2016.

The Authority uses a form to notify employees of their eligibility for FMLA leave and their rights and responsibilities when taking this leave.  Snipes' form stated that, among other things, he was required to provide to the Authority every thirty days reports about his leave status and intent to return to work.  The form also noted that he had a right under the FMLA to up to twelve weeks of leave.  The Authority's Human Resources Manager, Georgia Fitzgerald, testified in her deposition that employees using FMLA leave may be disciplined if they do not provide the Authority with the required status updates.  Moreover, employees may be terminated if they exceed the twelve weeks of permitted leave.

In March 2016, Larry Kilgore, then a captain supervising Snipes, met with Fitzgerald regarding Snipes' leave.  In a memorandum that Kilgore prepared on March 29, 2016, to document his conversations with Fitzgerald and Snipes,[1] Kilgore noted that he had told Snipes that he was out of compliance with the Authority's FMLA reporting requirements and the Authority would terminate him

---

[1] "[H]earsay evidence, which is inadmissible at trial, cannot be considered on a motion for summary judgment." *Md. Highways Contractors Ass'n v. Md.,* 933 F.2d 1246, 1251 (4th Cir. 1991).  In his deposition, Kilgore stated that he prepared this memorandum on or about March 29, 2016, but he could not fully remember the meeting at the time of his deposition.  Accordingly, I find the memorandum admissible as an exception against hearsay pursuant to Federal Rule of Evidence 803(5) as Kilgore's recorded recollection.

if he exceeded his twelve weeks of leave and did not communicate with Human Resources about his leave status. Snipes returned to work sometime after this conversation.

On April 26, 2016, Snipes missed a scheduled supervisory meeting that Kilgore and Dwayne Lockhart, then a major, had expected him to attend. Shortly after the meeting was supposed to have begun, Lockhart called Snipes at home, and Snipes said that he had forgotten about the meeting and would try to arrive in time for the remainder of it. Lockhart told Snipes that they were going to begin without him and not to rush to arrive. Snipes came to the jail that day for his shift, which was after the supervisory meeting, but he did not arrive in time for any of the meeting.

Also on April 26, Snipes received a written performance appraisal from the Authority, which described his leadership and staff relations as commendable, the second highest rating. It also described his ability to interact with others and his teamwork skills as distinguished, the highest rating. Snipes' overall performance was characterized as competent, the median rating. According to the appraisal form, competent performance "clearly meets the requirements of the position" and "reflects a solid level of performance," and "[c]ontinued performance at this level would be perfectly acceptable." Mot. Summ. J. Ex. 6, Kilgore Dep. Ex. 2 at 2, ECF No. 23-6. The appraisal also established three goals for Snipes to meet by the

end of the year, including spending more time in the back of the jail rather than in his office, and encouraging teamwork and building morale during his shifts.

On May 10, a video recording showed Snipes using inappropriate language with an inmate. Kilgore later referenced this incident in a supervisory meeting, stating, "Let's make sure we're doing the right thing. . . . You know what I'm talking about, Snipes." Mot. Summ. J. Ex. 1, Snipes Dep. 40:5–7, ECF No. 23-1.

On May 24, Snipes met with Kilgore and Tony Mullins, an administrative lieutenant. Snipes told Kilgore that the procedure his wife had undergone on March 14 had not resolved her health problems and she would need to be seen at a clinic in Ohio. In what Snipes thought was a negative tone, Kilgore stated, "Snipes what are you going to do, you are out of time you cannot take anymore leave." Mot. Summ. J. Ex. 3, Pl.'s Resp. to Def.'s Interrogs. 4, ECF No. 23-3. Snipes responded that he did not believe that he was out of leave time, and Kilgore told him to speak with Human Resources about his remaining leave because he and Fitzgerald believed he was out of time. This conversation concerned Snipes because a previous major, Mathew Pilkenton, had once told him that he should not have suggested FMLA leave to an employee who was considering quitting due to mental health issues.[2] Pilkenton had told Snipes that doing so would keep a

---

[2] This statement was made by the Authority's agent or employee in a matter within the scope of his employment, and it is therefore not inadmissible hearsay. *See* Fed. R. Evid. 801(d)(2)(D).

position at the jail open and unfillable until the employee decided whether or not to return. Snipes understood this statement to mean that employees who take FMLA leave are "sucking the system dry," and that use of FMLA leave was generally looked down upon by jail administrators. Snipes Dep. 59:21–22, ECF No. 23-1. Pilkenton had been Lockhart and Kilgore's direct supervisor, and he had trained them in their duties.

At the conclusion of the meeting with Kilgore and Mullins, Snipes was given a list of subordinates and instructed to notify them that they had received interviews for a corporal position. Snipes asserts that he spoke with or left messages for all of the interviewees. However, two individuals did not appear for their interviews, and one told Kilgore that Snipes had not contacted him. Around the same time, an inmate had a medical emergency during a shift from which Snipes had been excused. Tonia Henley was the sergeant on duty when the incident occurred, and Snipes contends that Henley did not contact him about it.

On May 27, Kilgore mentioned the missed interviews and Snipes' lack of knowledge about the medical emergency to Snipes, and Snipes became upset and cursed at Kilgore. Immediately after this interaction with Kilgore, Snipes went to a meeting that he was to lead prior to the start of the night shift. There were approximately twenty-eight of Snipes' subordinates at this meeting. In front of these individuals, Snipes spoke to Henley about her communications with Kilgore

regarding the emergency during Snipes' shift. Snipes lost his temper and raised his voice during this conversation, telling Henley that Kilgore was "jumping [his] ass" because of her communications with Kilgore about Snipes. Snipes Dep. 63:14, ECF No. 23-1. In a separate, private conversation the same day, Snipes spoke with one of the individuals who did not appear for the corporal interview.[3] Snipes later told Kilgore and Lockhart that he had lost his cool with him and owed him an apology. In light of Snipes' behavior during the meeting and the incidents leading up to it, Kilgore sent Snipes home from the May 27th shift. When Kilgore sent Snipes home, he stated, "With everything going on with your wife, I think it's best you go home." Snipes Dep. 67:15–16, ECF No. 23-1.

In Kilgore's opinion, Snipes had been losing the confidence of his subordinates prior to the May 27 incident. During interviews for a corporal position on Snipes' shift, Kilgore had heard from Snipes' subordinates that they rarely saw Snipes during the shift because he stayed in his office. Kilgore had also observed this behavior himself. In February 2016, Kilgore had spoken with Snipes about the need for him to spend more time in the back of the jail with his subordinates rather than in his office. Kilgore had also written a memorandum to memorialize this conversation.

---

[3] This individual is identified as "Woodleaf" or "Woodlief."

In his deposition, Kilgore testified that the May 27 incident was the tipping point at which he recommended that Snipes' employment be terminated. Lockhart agreed with Kilgore, and he received approval to terminate Snipes. On May 31, 2016, Lockhart and Kilgore requested that Snipes come to the jail to meet with them. Snipes secretly recorded the meeting with his cell phone. At the beginning of the meeting, Snipes agreed that what he had done in the May 27 meeting was wrong and he had lost respect from everyone at the meeting. Lockhart told Snipes that his work performance had been declining, his behavior in the meeting was unacceptable, and his leadership and support for his staff was nonexistent. As an example of Snipes' lack of leadership, Kilgore referenced the amount of time Snipes spent in his office rather than in the jail with his subordinates, and he stated that other employees had told him that there was no leadership on Snipes' shift. Lockhart told Snipes that as a result, the Authority was terminating his employment. Snipes was also given an Employee Status Change form, which stated as the basis for his termination, "Leadership and support for staff is not acceptable." Mot. Summ. J. Ex. 2, Pl.'s Initial Disclosures 8, ECF No. 23-2.

In his deposition, Kilgore testified that the decision to terminate Snipes' employment stemmed from Snipes' failure to interact with his staff outside of his office, along with his behavior in the May 27 meeting, change in demeanor, and use of profanity with an inmate. Kilgore also testified that Snipes' behavior in the

May 27 meeting constituted a failure of leadership and misconduct, and the Employee Status Change form might not have included misconduct as a basis for Snipes' termination because it could have harmed Snipes' future employment prospects. Lockhart also testified in his deposition that Snipes' behavior in the May 27 meeting amounted to misconduct and was part of the basis for his termination. Lockhart testified that he may not have included the full extent of Snipes' misconduct on the Employee Status Change form in an effort to protect Snipes' future employment prospects.

Thereafter Snipes filed the present action against the Authority, alleging that it violated the FMLA by interfering with his use of FMLA-protected leave and retaliating against him for using FMLA-protected leave. I dismissed Snipes' allegation of interference for failure to state a claim upon which relief may be granted. *Snipes v. Sw. Va. Reg'l Jail Auth.*, 350 F. Supp. 3d 489 (W.D. Va. 2018). The Jail Authority now moves for summary judgment on Snipes' remaining retaliation claim. The summary judgment motion has been fully briefed and orally argued and is now ripe for decision.

II.

Federal Rules of Civil Procedure require a court to grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). A fact is material if its existence or non-existence could result in a different jury verdict. *JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). Only disputes over material facts will preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a summary judgment motion, the court should consider the parties' pleadings, depositions, answers to interrogatories, admissions on file, and affidavits. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[T]he court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party." *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). However, the court may not itself weigh the evidence or determine the truth of the matter. *Anderson*, 477 U.S. at 249.

Snipes contends that the Jail Authority terminated his employment in retaliation for his use of FMLA leave. In its Motion for Summary Judgment, the Jail Authority counters that it instead terminated Snipes for a legitimate, nondiscriminatory reason — his failure of leadership — that he cannot show was pretextual.

The FMLA makes it unlawful for any employer to "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the FMLA]." 29 U.S.C. § 2615(a)(2). FMLA discrimination claims

are analogous to discrimination claims brought under Title VII of the Civil Rights Act ("Title VII"). *Laing v. Fed. Express Corp.*, 703 F.3d 713, 717 (4th Cir. 2013). Thus, a court will evaluate a plaintiff's FMLA discrimination claim using Title VII standards. *Id.* A plaintiff may successfully make an FMLA discrimination claim by providing direct evidence of discrimination or by satisfying the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

A.

A plaintiff provides direct evidence of discrimination if the evidence directly reflects the alleged discriminatory attitude and bears on the contested employment decision. *Id.* An employer's accurate explanation of the FMLA's requirements for employers and employees is also not evidence of discrimination. *See Sharif v. United Airlines, Inc.*, 841 F.3d 199, 205 (4th Cir. 2016) ("factual communication between human resources personnel [and employees] is not, without more, evidence of discriminatory animus"); *Laing*, 703 F.3d at 718 (holding that a reasonable jury could not find evidence of a discriminatory attitude when the employer "accurately explained that the FMLA did not 'necessarily' require the company to keep [the employee]'s job open."). Further, employers may ask employees questions regarding their need for FMLA leave and the details of their leave. 29 C.F.R. § 825.302(c). Moreover, "[t]he FMLA does not impose 'a general civility code for the American workplace.'" *Hasenwinkel v. Mosaic*, 809

F.3d 427, 434 (8th Cir. 2015) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). "[P]etty slights or minor annoyances that often take place at work and that all employees experience" do not amount to discrimination. *Burlington*, 548 U.S. at 68. Direct evidence of discrimination cannot be based on the employee's conclusory allegations or subjective beliefs. *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 584–85 (6th Cir. 1992).

I find that there is no direct evidence of discrimination. Kilgore's comment to Snipes in the May 24 meeting was a question regarding Snipes' need for FMLA leave and a factual communication regarding his assessment of Snipes' remaining FMLA leave.[4] Accepting that he made this comment in an exhausted tone, this is no more than a petty slight that all employees may experience at work. Thus, it is not direct evidence of discrimination. Moreover, Pilkenton's past comment to Snipes did not directly bear on Snipes' termination, and Snipes' conclusion that the comment reflected a negative attitude that Pilkenton had instilled in Kilgore and Lockhart is conclusory and insufficient to show direct evidence of discrimination. Accordingly, I will consider whether Snipes has satisfied the *McDonnell Douglas* burden-shifting framework.

---

[4] Although the parties do not address Kilgore's March 29, 2016, conversation with Snipes regarding Snipes' failure to comply with the Authority's FMLA reporting requirements and the Authority's right to fire him if he exceeded twelve weeks of FMLA leave, I find that this statement was also a factual communication and not direct evidence of discrimination.

B.

To successfully make a discrimination claim under the *McDonnell Douglas* framework, plaintiffs must first make a prima facie showing that (1) they engaged in protected activity, (2) the employer took adverse action against them, and (3) the adverse action was causally connected to the plaintiff's protected activity. *Yashenko v. Harrah's NC Casino Co.,* 446 F.3d 541, 551 (4th Cir. 2006). Taking FMLA leave constitutes engaging in protected activity, and termination is an adverse action. *Id.* A close temporal relationship between these two events is sufficient to make a prima facie showing of causality, *Laing*, 703 F.3d at 720, and the Fourth Circuit has held that periods of two, three, and five months between them are sufficient to make this showing. *Moss v. City of Abbeville*, 740 F. Supp. 2d 738, 745 (D.S.C. 2010) (citing cases).

Once the plaintiff puts forth evidence sufficient to establish a prima facie case of discrimination, the burden shifts to the employer to put forth a legitimate, nondiscriminatory reason for the employment action. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142 (2000). This burden is one of production rather than persuasion. *Id.* "[W]hen an employer gives a legitimate, non-discriminatory reason for discharging the plaintiff, 'it is not our province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination.'" *Hawkins v. PepsiCo, Inc.*, 203

F.3d 274, 279 (4th Cir. 2000) (quoting *DeJarnette v. Corning, Inc.*, 133 F.3d 293, 299 (4th Cir. 1998)).

If the employer produces this evidence, the burden shifts back to the employee to prove by a preponderance of the evidence that the employer's legitimate reason was a pretext for discrimination. *Reeves*, 530 U.S. 143. The employee may do so by showing that the employer's proffered explanation is unworthy of credence. *Id.* "Prior satisfactory performance evaluations can be evidence that a more recent claim of poor performance is pretext for discrimination." *Moss*, 740 F. Supp. 2d at 746–47. When the employer's reason was based in the employee's performance, evidence that the employer actually believed the performance was good may show that the reason was a pretext. *See Hawkins*, 203 F.3d at 279. It is "the perception of the decisionmaker which is relevant not the self-assessment of the plaintiff." *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007) (quoting *Beall v. Abbott Labs.*, 130 F.3d 614, 620 (4th Cir. 1997)). Thus, an employee's disagreement as to the quality of his or her work is irrelevant. *Hawkins*, 203 F.3d at 280.

The Authority does not contest that the temporal proximity of Snipes' FMLA leave and termination is sufficient to make out his prima facie showing of discrimination. However, it asserts that Snipes' termination was for a legitimate, nondiscriminatory reason — his misconduct and failure of leadership at the May

27 meeting and the lack of leadership and support for staff on his shifts. The Authority also argues that there is no evidence pursuant to which a jury could find that this reason was pretext for discrimination based on Snipes' FMLA leave. However, Snipes contends that he has set forth evidence sufficient to raise a genuine issue of fact as to whether the Authority's reason was pretext.

Snipes argues that a jury could find that the Authority's proffered reason for his termination was pretext because he has set forth evidence suggesting that the Authority's concerns with his leadership were unworthy of credence. In particular, Snipes relies on the positive ratings he received for leadership and staff relations in his April 26, 2016, performance appraisal. Snipes also alleges that his superiors had discussed with him the need to spend more time outside of his office only once, rather than on numerous occasions, as the Authority contends. In addition, Snipes notes the lack of any disciplinary record regarding leadership issues or his interactions with his subordinates.

I find, as the Authority has conceded, that Snipes has made a prima facie showing of discrimination. I also find that Snipes has set forth evidence sufficient to raise a genuine issue of fact as to whether the Authority's reason for his termination was pretextual. In his performance appraisal, just a month before his termination for allegedly ongoing failures of leadership, Snipes was given high ratings in areas that are directly relevant to leadership. Moreover, the appraisal

rated his overall performance as competent, or clearly meeting the requirements of the position. Snipes' termination occurred just a week after he had told Kilgore and Mullins that he may need to take more FMLA leave and Kilgore had reacted to this news negatively. Snipes also testified that a previous jail administrator had told him that he shouldn't extend FMLA leave to employees because doing so creates an open position that the Authority cannot fill until the employee returns. Although the Authority has emphasized Snipes' conduct at the May 27 meeting as a significant part of its reason for his termination, it is up to the jury to weigh this evidence against that described above to determine the issue of pretext. Accordingly, the Authority is not entitled to summary judgment as to Snipes' claim that it violated the FMLA by discriminating against him for his use of FMLA-protected leave.

### III.

For the foregoing reasons, it is **ORDERED** that the Motion for Summary Judgment, ECF No. 23, is DENIED.

ENTER: March 11, 2019

/s/ James P. Jones
United States District Judge